PHILAD'A,
August, 1823.

The Com'th
v.
Deacon.

GENERAL SESSIONS,

NEW YORK, JUNE, 1822.

*The People*
vs.
*Jacob Barker.* } MISDEMEANOR.

*Maxwell*, District Attorney. *Price* and *Bunner*, for the People.
*Jacob Barker*, in propria persona.

Jacob Barker was charged at common law, and under the statute, for sending or delivering a challenge, pursuant to the act of the legislature, passed 1816. To which he pleaded not guilty. He was tried in May Term, and found guilty on all the counts; and at this term he moved in arrest of judgment, (and was heard at great length,) on the grounds detailed in the following decision:

RIKER, Recorder. With regard to your objection, Mr. Barker, we cannot allow to it the weight you demand. We are here to administer justice agreeably to the facts, as found for us by the jury, and the law of the

N'W YORK,
June, 1822.

The People
v.
Jacob Barker.

land, as applicable thereto. If there are any apparent difficulties in the case, they must arise, as you suggest, from the blending of the common law and the statute; and that is your misfortune.

In the indictment there is a count on each. You are indicted in pursuance of the act of the legislature of 1816, for the suppression of duelling, for sending or delivering a challenge to David Rogers, on the 29th January last. The indictment also embraces a count as at common law for the same offence on the 6th February. The punishment at common law is fine or imprisonment, or both, in the discretion of the court. According to the statute, the penalty is disfranchisement, or inability to hold any office under the government of the state. The question of fact, whether you did send a challenge to Mr. Rogers, or not, was fairly submitted to a jury of the country, and they returned a verdict against you. You wished the matter to be further examined and discussed, and you were heard at great length against the verdict of the jury. You argued on that occasion,

1st. That the jury found their verdict on insufficient evidence.

2d. That they returned a verdict founded on chance; and,

3d. That the statute, under which you was tried and convicted, was originally unconstitutional, and had at any rate been abrogated by the new constitution of the state.

The court are unanimously of the opinion that it would not be just to inflict the penalty of both the laws; and we cannot take up the general verdict against you, and impose the cumulative penalties which that verdict would seem to sanction, without rendering two separate judgments. The verdict and the record, however, you must take as they are, for the ground of your writ of error, and we must proceed to pronounce such sentence as we conceive that our duty enjoins.

As at common law, however, we shall not consider the verdict; for, in the first place, we on the trial considered only the statutable offence. The proof not having sustained the count at common law, we put it to the jury only as an offence against the statute, though they found a general verdict against you. Should we go farther now, it would be inflicting a double punishment, and contrary to the testimony in the cause.

You say, first, that the jury found a verdict against you on insufficient evidence. The court can only say, upon this head, that the jury had your letter to Rogers of the 29th of January before them, as well as all the other evidence of the case, and they found a verdict against you. And we are not prepared to say that evidence was not sufficient.

As to the second ground, that the jury found a verdict against you on chance, you brought the declarations of jurors to prove that the jury agreed, if nine of the panel should unite in a verdict, the other three should fall in and find with them. Such conduct would undoubtedly be reprehensible; and this court takes this occasion to

say, that nothing would be more alarming than for our juries to adopt any other method of making their verdicts than the true merits according to the evidence.

The Recorder illustrated this opinion with some feeling, and stated impressive cases which might occur if there should be a recurrence of such a practice; and continued:

We have no hesitation to say, that that objection would be fatal if established by legal evidence; but you have only the proof which some of the jury themselves gave; and it is a well-settled point, that a juryman cannot be heard to disparage his own verdict.

The proof must be derived *aliunde,* and no such proof is produced. To this doctrine we have the cases of Dana v. Tucker, decided in our supreme court; (4 Johns. Rep. 487.) the case of The People v. John Francis and John Jones, also decided in this very court, in the year 1816, Judge Radcliffe, mayor, presiding; and the question, in fact, may be considered as settled beyond controversy.

In those cases the depositions of some of the jurors were offered, and rejected upon the principle we have mentioned.

But your third and great objection is, that the statute under which you have been tried and convicted is abrogated by the new constitution. In the first place, you say, that by the new constitution all test oaths are abolished, and that the law in question, containing one, is

therefore null and void. The second section of the stat-
ute, containing the oath, the court themselves do not find
any hesitation in saying is abrogated by the new con-
stitution; still, however, it does not follow that the rest of
the statute is annulled : far from it. An act of the legis-
lature which expressly repeals a particular clause of
another act, does not repeal the whole act, but, in legal
construction, confirms the remaining clauses ; and *a for-
tiori*, the repeal of a particular clause of an act, by impli-
cation, leaves the other clauses in all their force. The
statute of 1816 remains in full effect as to its disenfran-
chising qualifications against you.

. Again ; you say the act is unconstitutional, because it
disfranchises a citizen, and renders him ineligible to of-
fice, without the commission of an infamous crime ; and
finally, that it inflicts an unusual punishment, whereas
the constitution forbids the infliction of cruel or unusual
punishments. Of the power of- the court to decide on
these questions of unconstitutionality, we have here first
to remark, that the court entertains-no doubt that power
does unquestionably rest on every legal tribunal. The
constitution of the land binds equally the legislature and
the courts; and the courts, in the exercise of their legiti-
mate functions, may decide, when called upon, that the
legislature has transcended its authority. If the legisla-
ture, for instance, in some act it passes, shall enjoin
religious or test oaths, in direct contravention of the con-
stitution, the great charter of all our rights, the courts
will declare that act unconstitutional and void. And,
again, our constitution expressly disqualifies any man
from holding the office of judge over sixty years of age :
but if by a law of the legislature to that effect, a judge,

regardless of the constitutional restriction, holds on still beyond that age, and, we will suppose, tries and convicts a person of a capital offence, and passes sentence on him, in pursuance of which he is executed, the judge would be a murderer. He had no more right than any other citizen to doom that fellow-citizen to death; and if tried before a court, that court must pronounce that judge guilty of murder. If, in a word, the people in their supreme authority impose restraints upon the legislature, the courts must follow the sovereign dictation of the people, and disobey the legislature.

And now, of the constitutional points in question : And first, of that which ordains, that "no citizen shall be disfranchised but by due course of law, and the trial of his peers." On this objection a very few words will be sufficient. A grand jury has found an indictment in due form against you, and a jury of your peers have heard your trial under that indictment, and found you guilty. You are, therefore, convicted in due form of law ; and we cannot agree with you, that the legislature are inhibited from disfranchising a citizen but on conviction of an infamous crime.

We come next to consider what we are to understand by unusual punishments. In 1688, when William and Mary came to the throne of England, on the abdication of James, this act, which we have copied, was first introduced to restrain an inhuman practice, which had crept into the law, of cutting off the ear, slitting the nose, and maiming the persons of offenders. And this act has continued ever since. But what has been the construction of it, and the practice under it ? Men have

been disfranchised and deprived of their eligibility to office in every period of the law since, and the exception now taken was never heard of before. Besides, the direct operation of many of our most wholesome laws virtually disfranchises men every day. You contend that the right of being elected to office, and of voting for men to office, are correlative, and must exist together, or both perish. How, then, can you reconcile with the constitution the provisions of the law which effectually prevent a man from being eligible to office, who may happen to be actually imprisoned for debt; and where, on the other hand, is the elector's boasted privilege, when perhaps his favorite candidate may be confined under process for debt, or, perhaps, serving out a most ungracious sentence in the penitentiary or state prison? Or, again, where, even in a case of a different description, that candidate holds a judicial office, and so cannot be elected by the constitution to any office in the gift of the people?. and so of a clergyman, who, under our state constitution, can hold no political office? Other cases might be pointed out if necessary.

Therefore, the defendant's points have all failed him, and we shall conclude by repeating our opinion, that the statute of 1816, to restrain duelling, is only annulled as to the 2d section, which requires the test oath, and is valid in all the remaining parts, and that by the finding of the jury we must pronounce on you the sentence of the law. We feel constrained, also, to pronounce one word of reprobation on the direful practice of duelling, to which the defendant himself assented most fully in his argument. It is a practice most abhorrent to reason, to humanity, and to religion. By it many of our

N'W YORK,
June, 1822.

The People
v.
Jacob Barker.
best citizens have been destroyed—many a worthy family rendered miserable.   We are bound by every sanction to lend our aid to extinguish it.   The sentence of the court, therefore, is, " that you be incapable of holding, or being elected to, any post of profit, trust, or emolument, civil or military, under this state."

---

# GENERAL SESSIONS.

## NEW YORK, SEPTEMBER, 1823.

